

FRANCES BEROSET, on behalf of himself, and as representative of a class of participants and beneficiaries on behalf of the Duke University Faculty and Staff Retirement Plan,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**CLASS ACTION**

*Plaintiff*,

vs.

**Case No.**

**1:25-cv-00919-CCE-JLW**

**JURY TRIAL DEMANDED**

DUKE UNIVERSITY, THE INVESTMENT ADVISORY COMMITTEE OF THE DUKE UNIVERSITY FACULTY AND STAFF RETIREMENT PLAN, AND JOHN AND JANE DOES 1-30,

*Defendants*.

_____ /

## CLASS ACTION AMENDED COMPLAINT

## I. INTRODUCTION

1.      Plaintiff Frances Beroset ("Plaintiff") on behalf of himself, and as representative of the class, and on behalf of the Duke University Faculty and Staff Retirement Plan (the "Plan") brings this action under 29 U.S.C. §§ 1132(a) (2) & (3) against the Plan's fiduciaries, which include: (1) Duke University ("Duke" or the "Company"); (2) the Investment Advisory Committee of the Plan and its associated members during the Class Period[1] (collectively, the "Committee");

_____

[1] The Class Period is defined as January 1, 2019, through the date of judgment.

1

(3) each Associate Vice President of Total Rewards[2] during the Class Period; and (4) John and Jane Does 1–30 (the "Members") (collectively, the Company, the Committee, the VP, and the Members shall be referred to as the "Defendants"). Plaintiff alleges Defendants are liable for: (1) breach of ERISA's fiduciary duties; (2) violation of ERISA's anti-inurement provision; and (3) engaging in self-dealing and transactions prohibited by ERISA.

2. The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34) and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

3. Defendants' breaches of ERISA as alleged herein each arise from Defendants' disloyalty and imprudent process for allocating and exhausting forfeited Plan funds. Defendants failed to put in place and/or follow prudent processes to allocate forfeited funds loyally, timely, and prudently. As a result, Defendants consistently chose to allocate Plan participant forfeited funds without considering what would be in the Plan participant's best interest, exclusively to reduce Company contributions to the Plan, when in many occasion these funds would have benefitted Plan participants more if they were applied to reduce or eliminate the amounts charged to Plan participants as administrative expenses. In that same vein, Defendants also failed to promptly exhaust millions of dollars of forfeitures at each respective year's end, choosing to leave millions of dollars of forfeited Plan funds untouched rather than using them to reduce administrative expenses or otherwise to benefit the Plan participants. Absent imprudent process or disloyalty these decisions would not have occurred.

4. These choices by Defendants have cost Plan participants millions of dollars during the Class Period, including Plaintiff.

---

[2] As defined in the Plan document.

2

## II.  JURISDICTION AND VENUE

5.  This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, ERISA Section 502(a), pursuant to 29 U.S.C. § 1132.

6.  This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

7.  Venue lies in this district pursuant to 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1132(e)(2), because some or all the violations of ERISA occurred in this District and Defendants reside and may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.  THE PARTIES

### A. Defendants

8.  At all relevant times, Defendant Duke sponsored the Plan.  Duke is a private research university located in Durham, North Carolina, which offers undergraduate, graduate, and professional programs across multiple schools.[3]  Duke is considered one of the most prestigious private research universities in the United States,[4] and is tied for the number six ranking for national universities by U.S. News.[5]

---

[3] *See* https://www.duke.edu/about/. (last accessed October 3, 2025)
[4] https://share.google/CNgzEtq4m2b5Otndz. (last accessed October 3, 2025)
[5] https://www.usnews.com/best-colleges/duke-university-2920. (last accessed October 3, 2025)

3

9. At all relevant times, Defendant Duke was the sponsor of the Plan per ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C); and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it exercised discretion over the administration and management of the Plan and/or control of Plan assets.

10. At all relevant times, the VP was the Plan administrator under ERISA § 3(16), 29 U.S.C. § 1002(16); a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C); and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it otherwise exercised discretion over the administration and management of the Plan and/or control of Plan assets.

11. At all relevant times, the Committee was a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A) and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it had or exercised discretion over the administration or management of the Plan and/or control of Plan assets, as well as being named a named fiduciary within the governing Plan documents.

12. To the extent that there are additional officers, investment managers, employees and/or contractors of the Company, who are/were fiduciaries of the Plan during the Class Period, or were hired as an investment manager for the Plan during the Class Period, the identities of whom are currently unknown to Plaintiff, Plaintiff reserves the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown Doe Defendants 1-30 include, but are not limited to, Company officers, Plan Investment Managers, employees and/or contractors who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.

4

**B. Plaintiff**

13.     At all relevant times, Plaintiff Frances Beroset, by virtue of his employment with Duke and participation in the Plan throughout the relevant time period, is or may become eligible to receive additional benefits under the Plan as a result of Defendants' breaches of fiduciary duty and ERISA violations. Thus, Plaintiff is a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

14.     During Plaintiff's employment, Plaintiff participated in the Plan paying the Plan administration costs associated with the Plan. Plaintiff suffered injury to Plaintiff's Plan accounts due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administration costs which, if used to pay for Plan administration costs, would have reduced or eliminated the amounts charged to Plaintiff's individual accounts to pay for the Plan administration costs. Plaintiff also suffered injury due to Defendants' failure to promptly exhaust millions of dollars of forfeitures that could have been used to pay Plan administration costs or otherwise used to benefit the participants.

15.     As a Plan participant and a holder of the disputed funds, Plaintiff has standing to bring claims on behalf of the Plan pursuant to 29 U.S.C. §1132(a)(2), as Plaintiff is a participant seeking appropriate relief under 29 U.S.C. § 1109.

16.     Plaintiff has standing to bring claims on behalf of all holders of the disputed funds in the Plan because Plaintiff participated in the Plan and was injured by Defendants' unlawful conduct.  Plaintiff is entitled to receive benefits in the amount of the difference between the value of what Plaintiff's accounts are or would have been worth, but for Defendants' breaches of ERISA as described herein.

17. Plaintiff did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

## IV. DEFENDANTS' FIDUCIARY DUTIES

18. ERISA imposes strict fiduciary duties upon the Defendants as fiduciaries of the Plan, the duty of prudence, the duty of loyalty, anti-inurement, duty to defray expenses, and the requirement to refrain from prohibited transactions. These duties apply to all fiduciary acts, including the Defendants' allocation of forfeitures.

19. ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B). Accordingly, fiduciaries must vigorously and independently investigate allocation of forfeitures with the skill of a prudent person acting in a like capacity and familiar with such matters.

20. Under ERISA's duty of loyalty, Plan fiduciaries must exercise their discretion "**solely in the interest of the participants and beneficiaries**" and "for the exclusive purpose" of "providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1) (emphasis added). This requires Plan fiduciaries to act with an "eye single" to the interests of Plan participants and beneficiaries and to "exclude all selfish interest and all consideration of the interests of third persons." *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (citation omitted). Fiduciaries violate that duty when they make decisions even in part to benefit themselves or third parties.

21. ERISA further "supplements the fiduciaries' general duty of loyalty to the Plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000);

6

*Cunningham v. Cornell Univ.*, 145 S. Ct. 1020 (2025). Among these prohibited transactions, a fiduciary "shall not cause the plan to engage in a transaction" if the fiduciary "knows or should know" that it constitutes a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" (29 U.S.C. § 1106(a)(1)(D)) and may not "deal with the assets of the plan in his own interest or for his own account" (29 U.S.C. § 1106(b)(1)).

22.      ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. 29 U.S.C. § 1105(a), titled "Circumstances Giving Rise to Liability", provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. The statute states, in relevant part, that: "[i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

23.      Under 29 U.S.C. § 1132(a)(2), a plan participant is authorized to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109. Section 1109(a) provides in relevant part: "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of

assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

## V.  FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

24. As required by 29 U.S.C. § 1102(a)(1), the Plan is maintained under a written document. During the relevant time period, different versions of the plan document governed the Plan at different time frames.

25. In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

26. The Plan is funded by a combination of wage withholdings by Plan participants and Company contributions, both of which are deposited into the Plan's trust fund. For each year of the class period, the Company made matching contributions of a participant's compensation contributed to the Plan, subject to the yearly annual limit.

27. Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become assets of the Plan.

28. As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

29. Substantially all expenses incurred for administering the Plan are paid by the Plan with Plan assets. Upon information and belief, throughout the Class Period, the annual administrative expenses have ranged from approximately $2,595,578 to $3,549,697 per year.

8

30. Participant accounts are each charged with a proportionate allocation of the expenses paid by the Plan. Throughout the Class Period, all participant accounts have been charged with administrative expenses on a regular basis. The deduction of administrative expenses from participant accounts reduces the funds available to participants for distribution and/or investing and therefore reduces long term growth.

31. Participants in the Plan are immediately vested in their own contributions, along with any income or losses on those balances. The Company's contributions, plus any income or losses on those balances, are fully vested upon completion of three or more years of service, attaining age 65 while an employee of the Company, incurring a disability while an employee of the Company, death while an employee of the Company, or death while performing military service. If the participant provided less than three years of service, none of the Company contributions are vested.

32. Any nonvested Company's contributions in a participant's individual account are forfeited, and Defendants exercise discretionary authority and control over how these Plan assets are thereafter reallocated. Throughout the Class Period, Defendants failed to prudently and loyally exercise such discretionary authority and control by failing to: (1) implement and apply a prudent process for allocation of forfeited funds; and (2) promptly exhaust forfeited funds.

33. The Plan allowed for forfeitures to be applied to future company contributions, and to pay reasonable administrative expenses of the plan. Upon information and belief, the Plan administrator is tasked to allocate the forfeited funds between the options.

34. A prudent and loyal fiduciary acting exclusively in the best interest of the participants would choose to offset employer contributions only to the extent that there is concern

9

that the Company would otherwise be unable to meet its future contribution obligations. Otherwise, reducing administrative expenses would be more beneficial to Plan participants.

35. Therefore, a prudent fiduciary would only offset the amount necessary to prevent the Company from being unable to meet its future contributions and then allocate the remaining funds to other more beneficial options, like reducing administrative expenses shouldered by the Plan participants.

36. Upon information and belief, Duke was able to meet its future contributions throughout the Class Period and would have been able to meet its contribution obligations each year, even if no forfeitures were applied to offset its contributions.

37. Yet, throughout the class period, Defendants *exclusively* applied forfeitures (*i.e.*, plan assets) to offset the *employer's* future contributions without weighing the benefits to Plan participants despite owing fiduciary duties to them.

38. Defendants' forfeiture allocation decisions are consistent with prioritizing the Company's own self-interest and/or failed to properly consider, and/or have prudent processes in place to consider, the best interests of the Plan and its participants.

39. Throughout the class period, Defendants consistently allocated millions of dollars to offset future Company contributions, while failing to allocate any forfeiture funds to administrative expenses. Additionally, Defendants' imprudent and disloyal decision left millions of dollars of unpaid administrative expenses for the participants to pay during each year of the Class Period.

40. Defendants also declined to allocate forfeited funds to the millions of dollars of unpaid administrative expenses even once the Company's contributions were offset, leaving up to

10

a million dollars in unused forfeitures during the Clas Period. Defendants chose to allow millions of dollars to sit unused rather than offset administrative expenses or otherwise benefit the Plan.

41. These facts and actions show, or, at a minimum, necessarily require the inference, that Defendants either had no prudent processes in place to discharge the funds timely or acted disloyally preferring to keep all the forfeiture funds to offset the Company's next year contributions beyond what was necessary rather than benefiting the Plan participants.

42. Defendants thus acted imprudently and disloyally by consistently choosing to allocate forfeitures to exclusively offset company contributions, all while leaving millions of dollars of unallocated forfeiture funds and millions of dollars of administrative expenses for participants to shoulder.

43. In 2019, Defendants allocated $1,955,745 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants allocated no forfeitures to pay administrative expenses, leaving a year-end balance of $2,595,578 of administrative expenses which was passed on to Plan participants. Additionally, Defendants maintained a balance of $409,064 in unused forfeiture funds at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, and failure to act solely to benefit the Plan participants, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

44. A prudent and loyal fiduciary presented with this scenario would not have applied millions of dollars to offset future company contributions and left hundreds of thousands of dollars unused when Plan participants shouldered over two million dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

11

45. In 2020, Defendants allocated $1,200,862 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants allocated no forfeitures to pay administrative expenses, leaving a year-end balance of $3,549,697 of administrative expenses which was passed on to Plan participants. Additionally, Defendants maintained a balance of $5,144,442 in unused forfeiture funds at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, and failure to act solely to benefit the Plan participants, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

46. A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left millions of dollars unused when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

47. In 2021, Defendants allocated $7,067,093 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants allocated no forfeitures to pay administrative expenses, leaving a year-end balance of $3,376,842 of administrative expenses which was passed on to Plan participants. Additionally, Defendants maintained a balance of $1,035,702 in unused forfeiture funds at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, and failure to act solely to benefit the Plan participants, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

48. A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left over a million dollars unused

when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

49. In 2022, Defendants allocated $2,482,007 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants allocated no forfeitures to pay administrative expenses, leaving a year-end balance of $3,100,569 of administrative expenses which was passed on to Plan participants. Additionally, Defendants maintained a balance of $242,650 in unused forfeiture funds at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, and failure to act solely to benefit the Plan participants, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

50. A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left hundreds of thousands of dollars unused when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

51. In 2023, Defendants allocated $2,005,787 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants allocated no forfeitures to pay administrative expenses, leaving a year-end balance of $2,752,685 of administrative expenses which was passed on to Plan participants. Additionally, Defendants maintained a balance of $480,691 in unused forfeiture funds at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating

13

forfeitures, failure to defray expenses, and failure to act solely to benefit the Plan participants, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

52. A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left hundreds of thousands of dollars unused when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

53. Upon information and belief, these imprudent processes and disloyal practices continued until July 1, 2025, when the Company amended the Plan to allow this practice going forward.

54. While Defendants' allocation of the forfeitures in the Plan's trust fund to reduce its future contributions benefitted the Company by reducing its own contribution expenses, it harmed the Plan, along with its participants and beneficiaries, by reducing future Company contributions that would otherwise have increased Plan assets and by causing participants to incur deductions from their individual accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing forfeited funds for that purpose. Therefore, Defendants' failure to consider the interests of the Plan participants in allocating forfeitures and failure to have processes in place that ensure the Plan participants' interests are considered harmed the Plan.

55. Similarly, Defendants' consistent failure to exhaust forfeitures timely by year-end harmed the Plan participants. Defendants imprudently left millions of dollars in forfeitures unused by year-end and failed to implement and follow any processes to prevent it.

56. Using the forfeitures to reduce Duke's contributions is always in the best interest of Duke because that option would decrease its own contribution costs.

57. Absent any risk that Duke would be unable to satisfy its contribution obligations, using forfeitures to pay administrative expenses would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses.

58. In deciding between using forfeitures to benefit Duke or using forfeitures to benefit the participants, Defendants are presented with a conflict of interest in administering the Plan and managing and disposing of the Plan's assets.

59. Despite the conflict of interest presented by this decision, Defendants failed to undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries.

60. Defendants did not, for example, investigate whether there was a risk that Duke would be unable to satisfy its contribution obligations if forfeitures were used to pay administrative expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan's expenses charged to participants and still offset a portion or all of Duke's own contribution obligations, as a prudent person would have done.

61. Defendants also failed to consult with an independent, non-conflicted decisionmaker to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

15

## VI. CLASS ACTION ALLEGATIONS

62. 29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. §1109(a).

63. As an alternative to direct individual actions on behalf of the Plan, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions.

64. Plaintiff seeks to certify the following class: All participants and beneficiaries of the Plan during the Class Period, excluding: Defendants; any person who was or is an officer, director, employee, or a shareholder of 5% or more of the equity of the Company or is or was a partner, officer, director, or controlling person of the Company, the spouse or children of any individual who is an officer, director or owner of 5% or more of the equity of the Company; Plaintiff's counsel; judges of the Court in which this case is pending and their current spouse and children; and the legal representatives, heirs, successors and assigns of any such excluded person (the "Class").

65. This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

   a. The class includes over 50,000 members and is so large that joinder of all its members is impracticable.

   b. There are questions of law and fact common to the class because Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions alleged herein as to the Plan and not as to any individual participant. Thus,

16

common questions of law and fact include the following, without limitation: Who are the fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a)? Did the fiduciaries of the Plan breach their fiduciary duties to the Plan with respect to their management and allocation of Plan assets? Did fiduciaries of the Plan engage in prohibited transactions with Plan assets? Did fiduciaries of the Plan violate the anti-inurement provision of ERISA by using Plan assets for their own benefit? What are the losses to the Plan resulting from each alleged breach of ERISA? What Plan-wide equitable and other relief should the Court impose to remedy Defendants' alleged breaches?

c. Plaintiff's claims are typical of the claims of the class because Plaintiff was a participant of the Plan during the Class Period and all participants in the Plan were harmed by the same alleged misconduct by Defendants. Defendants have no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

d. Plaintiff is an adequate representative of the class because Plaintiff was a participant of the plan during the Class Period, has no interests that conflict with any other members of the class, is committed to the vigorous representation of the class, and has engaged experienced and competent attorneys to represent the class.

e. Prosecution of separate actions for these breaches of fiduciary duties and prohibited transactions by individual participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to their discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C.

17

§ 1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties, prohibited transactions, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Any such recovery from Defendants will be paid to the Plan and any relief will flow to all Class Members through their accounts in the Plan. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

66. The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and its participants. This action challenges whether Defendants acted consistently with their obligations under ERISA as to the Plan as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

67. The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants engaged in prohibited transactions with respect to the Plan and fulfilled their fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

18

68. The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. This action challenges whether Defendants engaged in prohibited transaction and breaches of fiduciary duties which would be violations of ERISA as to the Plan as a whole and as to the Class as a whole. The relief sought in this case primarily consists of declarations that Defendants engaged in prohibited transactions or breached their fiduciary duties. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief that would either flow directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

69. The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendants engaged in prohibited transactions or breached their fiduciary duties to the Plan. As the members of the Class were participants in that Plan, their accounts were affected by those breaches and violations. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants duties and obligations were uniform to all participants and therefore all members of the Class. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

70. A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims generally are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. Class certification is a superior method of proceeding because it will obviate the need

19

for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties to the Plan.

71.  The following factors set forth in Rule 23(b)(3) also support certification:

a.  The members of the Class have an interest in a unitary adjudication of the issues presented here for the reasons that this case should be certified under Rule 23(b)(1).

b.  No other litigation concerning this controversy has been filed by any other members of the Class.

c.  This District is the most desirable location for concentrating this litigation because (i) the Company does business in this District; and (ii) a significant number of Class members are located in this District.

d.  There are no anticipated difficulties in managing this case as a class action.

72.  Additionally, or in the alternative, this action may be certified as to particular issues under Rule 23(c)(4), including but not limited to Defendants' liability to the Class for their allegedly imprudent and disloyal conduct.

73.  Plaintiff is represented by counsel experienced in prosecuting ERISA class actions and with experience and expertise in litigation involving ERISA breaches of fiduciary duty and ERISA prohibited transactions.

**COUNT I**
**BREACH OF FIDUCIARY DUTY OF LOYALTY**
**(29 U.S.C. 1104(a)(1)(A))**
**(against all Defendants)**

74.  Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Amended Complaint as though fully set forth herein.

75. At all relevant times, Defendants were named and/or de facto fiduciaries of the Plan within the meaning of ERISA insofar that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

76. As fiduciaries of the Plan, Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

77. Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

78. The duty of loyalty requires fiduciaries to act with an "eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "Perhaps the most fundamental duty of a [fiduciary] is that he [or she] must display…complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Id*. at 224 (quotation marks and citations omitted).

79. Defendants have continually breached this duty of loyalty with respect to their control and management of the Plan's assets throughout the Class Period by choosing to utilize forfeited funds in the Plan for the benefit of the Company rather than solely in the interest of the participants and beneficiaries.

80. Under the circumstances presented in this case, a non-conflicted fiduciary would have chosen to defray expenses instead of offsetting employer contributions. The fiduciaries' actions are more consistent with a fiduciary prioritizing the interests of the employer than the Plan participants.

21

81. Instead of acting solely in the interest of Plan participants by utilizing the forfeited funds in the Plan to reduce administrative expenses charged to their individual accounts, Defendants chose to use these Plan assets for the purpose of reducing its own future contributions to the Plan, thereby saving the Company millions of dollars each year at the expense of the Plan which received decreased Company contributions while its participants and beneficiaries were forced to incur avoidable expense deductions to their individual accounts.

82. A fiduciary acting solely in the interest of the Plan participants would have allocated forfeitures to pay administrative expenses as allowed by the Plan document.

83. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered millions of dollars in losses.

84. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

85. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**COUNT II**
**BREACH OF FIDUCIARY DUTY OF PRUDENCE – USE OF FOREFEITED FUNDS**
**(29 U.S.C. 1104(a)(1)(B))**
**(against all Defendants)**

22

86.     Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Amended Complaint as though fully set forth herein.

87.     At all relevant times, Defendants were named and/or de facto fiduciaries of the Plan within the meaning of ERISA insofar that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

88.     As fiduciaries of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

89.     ERISA mandates that fiduciaries act with prudence in the disposition of Plan assets and selection and monitoring of investments, as well as in the monitoring and minimization of administrative expenses. 29 U.S.C. § 1104(a)(1)(B).

90.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

91.     Defendants have continuously breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the class period by declining to use forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts and instead using such Plan assets to reduce the Company's own contributions to the Plan.

92.     Defendants failed to engage in a reasoned and impartial decision-making process to determine that using the forfeited funds in the Plan to reduce the Company's own contribution expenses, as opposed to using them to reduce the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider

23

whether participants would be better served by another use of these Plan assets after considering all relevant factors.

93.     By declining to use the forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, and instead using such Plan assets to reduce the Company's own contribution expenses, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay administrative expenses.

94.     As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.  In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

95.     Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**<u>COUNT III</u>**
**BREACH OF FIDUCIARY DUTY OF PRUDENCE – FAILURE TO EXHAUST**
**(29 U.S.C. 1104(a)(1)(B))**
**(against all Defendants)**

96.     Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Amended Complaint as though fully set forth herein.

24

97. At all relevant times, Defendants were named and/or de facto fiduciaries of the Plan within the meaning of ERISA insofar that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

98. As fiduciaries of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

99. ERISA mandates that fiduciaries act with prudence in the disposition of Plan assets. 29 U.S.C. § 1104(a)(1)(B).

100. Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

101. Defendants have continuously breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by failing to promptly exhaust forfeited funds.

102. In its Retirement News for Employers Newsletter from Spring 2010, the IRS published an article entitled "Fixing Common Plan Mistakes: Improper Forfeiture Suspense Accounts," discussing IRS Publication 4278-B (2010), p4278.pdf (irs.gov).

103. In pertinent part, that article states: "Forfeitures must be used or allocated in the plan year incurred. The Code does not authorize forfeiture suspense accounts to hold unallocated monies beyond the plan year in which they arise. Revenue Ruling 80-155 states that a defined contribution plan will not be qualified unless all funds are allocated to participants' accounts in accordance with a definite formula defined in the plan. This would preclude a plan from carrying over plan forfeitures to subsequent plan years, as doing so would defy the rule requiring all monies in a defined contribution plan to be allocated annually to plan participants."

25

104. The same article states that "[t]he plan document's terms should have provisions detailing how and when a plan will exhaust plan forfeitures. A plan's failure to use forfeitures in a timely manner denies plan participants additional benefits or reduced administrative expenses."

105. The IRS concludes that "this failure can be corrected by reallocating all forfeitures in the plan's forfeiture suspense account to all plan participants who should have received them had the forfeitures been allocated on time."

106. Consequently, Defendants were required to monitor plan forfeitures and allocate them by the end of the year. Defendants did not have adequate systems in place as demonstrated by a year-end balance in the forfeiture account during each year from 2019 to 2023.

107. Defendants violated their fiduciary duty of prudence by not using their forfeiture account as instructed by IRS, thereby causing Plaintiff and other Plan members to be denied additional benefits and reduced administrative expenses.

108. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the restoration of all plan losses resulting from Defendants' breach of their duty of prudence. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

109. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

26

## COUNT IV:
## BREACH OF ERISA'S ANTI-INUREMENT PROVISION
## (29 U.S.C. 1103(c)(1))
## (against all Defendants)

110. Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Amended Complaint as though fully set forth herein.

111. Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

112. The balance in a participant's accounts that a participant forfeits when incurring a break in service prior to full vesting of the Company's contributions to the participant's account is an asset of the Plan.

113. By electing to utilize these Plan assets as a substitute for the Company's own future contributions to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants caused the assets of the plan to inure to the benefit of the employer and failed to defray reasonable expenses of the plan in violation of 29 U.S.C. 1103(c)(1).

114. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from violation of ERISA's anti-inurement provision as alleged in this claim and to restore to the Plan all profits secured through their use of Plan assets. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

115. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed

27

to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**COUNT V:**
**PROHIBITED TRANSACTIONS**
**(29 U.S.C. § 1106(a)(1))**
**(against all Defendants)**

116. Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Amended Complaint as though fully set forth herein.

117. 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

118. 29 U.S.C. § 1002(14), defines a "party in interest" to include (A) "any fiduciary . . . of such employee benefit plan;" (B) "a person providing services to such plan;" (C) "an employer any of whose employees are covered by such plan," and "(H) any employee, officer, or director of such employer."

119. ERISA § 3(9), 29 U.S.C. § 1002(9) defines "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."

120. Defendants are or were both a fiduciary and a party-in-interest subject to ERISA § 406(a)(1)(C), (D).

121. By electing to use the forfeited funds in the Plan as a substitute for future employer contributions to the Plan, and thereby saving the Company millions of dollars in contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect

28

exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest.

122. As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

123. Additionally, when Defendants elected to use Forfeited Plan Assets as a substitute for declared Employer Matching Contributions to the Plan and not for Plan Expenses, Defendants caused the Plan to engage in prohibited transactions with the Plan's third-party administrator and other service providers for the payment of Plan Expenses from Plaintiff and all Plan Participants' individual accounts, both directly and indirectly, that were sent to the Plan's third-party administrators and other third party service providers and that should have been paid in part or full by the Forfeited Plan Assets.

124. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

125. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

126.    Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Amended Complaint as though fully set forth herein.

127.    29 U.S.C. § 1106(b), provides: "A fiduciary with respect to a plan shall not— (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

128.    Each of Defendants is or was both a fiduciary and a party-in-interest subject to ERISA § 406(b).

129.    Defendants violated this prohibition in their management and control of forfeiture funds in the Plan. By utilizing these Plan assets as a substitute for future employer contributions to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest, for the benefit of Defendant Duke, and for their own account.

130.    As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

131.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets. In addition,

Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

132. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**COUNT VII: Failure to Monitor**
**(29 U.S.C. § 1105(a))**
**(against the Company)**

133. Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Amended Complaint as though fully set forth herein.

134. The Company oversaw the overall governance of the Plan and had the authority to delegate fiduciary responsibilities.

135. The Company created the Committee to assist in the management of the Plan and delegated to the Committee authority and discretion to direct the trustee with respect to the crediting and distribution of the Plan assets.

136. The Company had the authority to appoint and remove members of the Committee, and the duty to monitor the Committee and were aware that the Committee Defendants had critical responsibilities as fiduciaries of the Plan.

137. In light of this authority, the Company had a duty to monitor the Committee Defendants to ensure that the Committee Defendants were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Committee Defendants were not fulfilling those duties.

31

138. A monitoring fiduciary must ensure that the person to whom it delegated fiduciary duties is performing its fiduciary obligations and must take prompt and effective action to protect the plan and participants when the delegate fails to properly discharge its duties. To the extent any of the fiduciary responsibilities of the Company were delegated to another fiduciary, the Company's monitoring duties included an obligation to ensure that any delegated tasks or responsibilities were being performed in accordance with ERISA's fiduciary standards.

139. The Company breached its fiduciary monitoring standard with respect to the Committee by, among other things, failing to monitor the Committee's management and use of forfeited funds in the Plan and by failing to take steps to ensure that the Committee were discharging their duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries.

140. As a direct result of the breach of its fiduciary duty to monitor, the Plan suffered losses. Had Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

141. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Defendants are liable to restore to the Plan all losses caused by their failure to adequately monitor the Committee Defendants. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims, and request that the Court order or award the following relief:

32

A.  Find and adjudge that the Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

B.  Find and adjudge that the Defendants are personally liable to make good to the Plan the losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for the breaches;

C.  Order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

D.  Impose a constructive trust over these profits;

E.  Determine the method by which Plan losses under 29 U.S.C. § 1109 should be calculated;

F.  Order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

G.  Order Defendants to make good to the Plan the losses resulting from each breach of ERISA and to restore to the Plan any profits resulting from each breach of ERISA;

H.  Apportion all amounts recovered for the Plan among the Plaintiff and the Class;

I.  Order that any amount to be paid to the Plan and/or accounts of Plaintiff and Class members can be satisfied by using or transferring any breaching fiduciary's account (or the proceeds of that account) to the extent of that fiduciary's liability;

J.  Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

K.  Impose surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

33

L.  Certify this action as a class action pursuant to Fed. R. Civ. P. 23, appoint the Plaintiff as class representatives, and appoint the law firms of Milberg Coleman Bryson Phillips Grossman PLLC., and Edelsberg Law as class counsel;

M.  Award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1), or order the payment of reasonable fees and expenses to Plaintiff' counsel on the basis of the common benefit or common fund doctrine (or other applicable law) out of any money or benefit recovered for the Class in this action;

N.  Award pre-judgement and post-judgment interest; and

O.  Award any other such relief the Court determines Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of these claims by jury to the extent authorized by law.

Dated: November 12, 2025

/s/ *Daniel K. Bryson*
Daniel K. Bryson
**BRYSON HARRIS SUCIU & DEMAY, PLLC**
900 W. Morgan Street
Raleigh, NC  27603
Tel:  (919) 600-5000
Fax: (919) 600-5035
Email: dbryson@brysonpllc.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

34

Alexandr Rudenco*
Arlene Boruchowitz*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay St., Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Emails: arudenco@milberg.com
aboruchowitz@milberg.com


Scott Edelsberg*
Gabriel Mandler*
Omer Kremer*
**EDELSBERG LAW**
20900 NE 30th Ave
Aventura, FL 33180
Tel: (305) 975-3320
Emails: scott@edelsberglaw.com
gabriel@edelsberglaw.com
omer@edelsberglaw.com

*Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff and the Prospective
Class*

35